Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff PAUL PARSHALL*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WEST MARINE, INC., BARBARA RAMBO, RANDY REPASS, MATT HYDE, DENNIS MADSEN, ROBERT OLSEN, JAMIE NORDSTROM, ALICE RICHTER, CHRISTIANA SHI, RISING TIDE PARENT INC., RISING TIDE MERGER SUB, INC., and MONOMOY CAPITAL PARTNERS,<br><br>Defendants. | Case No. 17-cv-04522<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of West Marine, Inc. ("West Marine" or the "Company") to enjoin a proposed transaction announced on June 29, 2017 (the "Proposed Transaction"), pursuant to which West Marine will be acquired by affiliates of private equity firm Monomoy Capital Partners.

2.      On June 29, 2017, West Marine's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Rising Tide Parent Inc. ("Parent") and Rising Tide Merger Sub, Inc. ("Merger Sub"), which are affiliates of Monomoy Capital Partners (collectively, "Monomoy").  Pursuant to the terms of the Merger Agreement, if West Marine's stockholders approve the Proposed Transaction, the Company's stockholders will receive $12.97 in cash for each share they own.

3.      On July 24, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of West Marine common stock.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

9.    Defendant West Marine is a Delaware corporation and maintains its principal executive offices at 500 Westridge Drive, Watsonville, California 95076.    West Marine's common stock is traded on the NASDAQ Global Market under the ticker symbol "WMAR."

10.    Defendant Barbara Rambo ("Rambo") has served as a director of West Marine since November 2009, and as Chairman of the Board since May 2015.

11.    Defendant Randy Repass ("Repass") is a director and founder of West Marine. He previously served as Chief Executive Officer ("CEO") and President of West Marine.

12.    Defendant Matt Hyde ("Hyde") has served as a director, President, and CEO of West Marine since June 2012.

13.    Defendant Dennis Madsen ("Madsen") has served as a director of West Marine since November 2010.

14.    Defendant Robert Olsen ("Olsen") has served as a director of West Marine since May 2013.

15.    Defendant Jamie Nordstrom ("Nordstrom") has served as a director of West Marine since December 2012.

16.    Defendant Alice Richter ("Richter") has served as a director of West Marine since January 2006.

17.    Defendant Christiana Shi ("Shi") has served as a director of West Marine since September 2011.

18.    The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.    Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20.    Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

21.    Monomoy Capital Partners is a New York-based private equity fund and formed Parent and Merger Sub in connection with the Proposed Transaction.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of West Marine (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.    This action is properly maintainable as a class action.

24.    The Class is so numerous that joinder of all members is impracticable.  As of June 28, 2017, there were approximately 25,278,072 shares of West Marine common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.    Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### A.    Background of the Company and the Proposed Transaction

29.    West Marine is a leading omni-channel specialty retailer in its industry, serving people who enjoy recreating on or around the water.  The Company offers a broad selection of core boating and water recreation products through 254 stores located in 38 states, Puerto Rico, and Canada, and two eCommerce websites reaching domestic, international, and professional customers.

30.    Over the past few years, the Company has implemented three key strategies to broaden the scope and appeal of West Marine as a waterlife outfitter, while maintaining its position as a leading boat parts specialty retailer.  To expand the Company's brand position, the Board has been focusing West Marine's efforts and investments on its omni-channel business model to improve the Company's operating margin, grow its customer base, and increase revenues.

31.    Specifically, West Marine has sought to grow its eCommerce business to 15% of total sales by the end of 2019, and to derive 50% of total sales from the Company's optimized and revitalized stores.  These strategies are supported by the Company's merchandise expansion strategy, which seeks to welcome a broader base of customers.

32.    West Marine's pursuit of its business strategies have been successful.  On February 23, 2017, the Company issued a press release announcing its financial results for the fourth quarter and fiscal year ended December 31, 2016.  In that press release, the Company posted the following highlights for the full year of 2016:

· Net income and earnings per diluted share were $6.5 million and $0.26, respectively, compared to net income and earnings per diluted share of $4.5 million and $0.18, respectively, last year, representing a 44.6% increase in net income.

· Net revenues for fiscal 2016 were $703.4 million, a decrease of 0.2% compared to fiscal 2015.

· Comparable store sales increased by 0.8% in fiscal 2016.

· Income before income taxes was $11.6 million, an increase of 59.1% compared to fiscal 2015.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

· Earnings before interest expense, income tax expense, depreciation and amortization ("EBITDA") increased to $34.0 million, compared to EBITDA of $28.3 million last year.

· Cash and cash equivalents totaled $76.1 million at the end of the year.

34.    The Company also disclosed its progress on its growth strategies for fiscal 2016 as follows:

· Sales from eCommerce websites increased by 19.7% compared to last year and represented 11.4% of total sales, compared to 9.5% for the same period last year, showing progress towards our goal of 15% of total sales.

· Sales through waterlife stores were 50.1% of total sales compared to 46.0% last year. This year-over-year increase resulted in the Company achieving its goal to deliver 50% of total sales through these stores that have been optimized to offer a broader selection of merchandise than its traditional stores that focus on core boating products.

· For fiscal 2016 compared to fiscal 2015, sales in merchandise expansion product lines, which include footwear, apparel, clothing accessories, fishing products and paddlesports equipment, increased 2.0%, while core product sales declined by 1.0%.

36.    With respect to the Company's impressive financial results, West Marine's CEO, Individual Defendant Hyde, commented:

I'm pleased with how the team has continued to execute on our strategies while driving higher profitability.  Of note, our overall pre-tax profits increased 59% on flat sales.   These results reflect our vigilance in improving the customer experience, increasing our margins by closing under-performing stores, implementing targeted expense structure improvements, focusing on waterlife store expansion and improving our omni-channel business.

37.    In light of these promising financial results, the Company informed investors that it expects net revenue to increase by 1% to 2% in fiscal 2017.  According to the press release, this revenue growth, combined with continued expense control, is expected to improve profitability, and the Company expects pre-tax profits to be up from $11.6 million in 2016 to a range of $13.0 to $16.0 million in 2017.

38.    Nevertheless, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

39.    To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor Monomoy and are calculated to unreasonably dissuade potential

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

suitors from making competing offers.

40.    The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

41.    Further, the Company must promptly advise Monomoy of any proposals or inquiries received from other parties.  Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Monomoy a "matching right" with respect to any "Superior Proposal" made to the Company.

42.    Further locking up control of the Company in favor of Monomoy, the Merger Agreement provides for a "termination fee" payable by the Company to Monomoy if the Individual Defendants cause the Company to terminate the Merger Agreement.

43.    By agreeing to the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

44.    The merger consideration is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

45.    Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

46.    Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

47.    The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

48.    First, the Proxy Statement omits material information regarding the Company's

1     financial projections.  In particular, the Proxy Statement provides projections for non-GAAP

2     (generally accepted accounting principles) metrics, including, among others, EBITDA, EBIT,

3     Net Income Per Diluted Share, and Unlevered Free Cash Flow, but it fails to provide line item

4     projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile

5     the non-GAAP projections to the most comparable GAAP measures.

6          49.     To avoid misleading stockholders with non-GAAP financial measures in business

7     combinations such as the Proposed Transaction, publicly traded companies must provide a

8     reconciliation of the differences between the non-GAAP financial measures with the most

9     comparable financial measures calculated and presented in accordance with GAAP.

10         50.     Indeed, defendants themselves admit to the misleading nature of non-GAAP

11     financial measures.  Specifically, the Proxy Statement states that:

12         In addition, certain of the financial projections are non-GAAP financial measures,
          including EBITDA net income [sic] and unlevered cash flow. Non-GAAP

13         financial measures should not be considered in isolated form [sic] or as a
          substitute for financial information presented in compliance with GAAP, and non-

14         GAAP financial measures as used by the Company may not be comparable to
          similarly titled financial measures used by other companies.

15

16         51.     Accordingly, to render the Proxy Statement not misleading, defendants must

17     provide a reconciliation of the non-GAAP projections to the most comparable GAAP measures,

18     as required by SEC regulations.

19         52.     The omission of this material information renders the "Financial Projections"

20     section of the Proxy Statement false and misleading.

21         53.     Second, the Proxy Statement omits material information regarding potential

22     conflicts of interest of the Company's officers and directors.

23         54.     In particular, the Proxy Statement fails to disclose the timing and nature of all

24     communications or overtures regarding future employment and/or directorship of West Marine's

25     officers and directors, including who participated in all such communications.

26         55.     Although the Proxy Statement indicates that "[n]o material [employment] terms

27     have been discussed to date," and that "none of the Company, Parent or Sub has entered into any

28

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

employment agreements with the Company's named executive officers solely in connection with the Merger," the Proxy Statement fails to inform stockholders whether any representatives of Monomoy made any overtures regarding potential future employment and/or directorship of West Marine's officers and directors.

56.    It is likely that such overtures were made.  For example, in the press release announcing the Proposed Transaction, Monomoy's Co-CEO Daniel Collin stated, among other things: "We strongly support West Marine's vision for the future, strategic initiatives, and culture.  We are excited to invest in and work together with the company's management team to continue to lead the industry."

57.    In addition, the Proxy Statement indicates that, for a period of one year following the effective time of the Proposed Transaction, Monomoy will "assume, honor and continue all of the Company's and its subsidiaries' employment, severance, retention and termination plans."

58.    Communications regarding potential post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

59.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of the Company's Directors and Executive Officers in the Merger."

60.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to West Marine's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated
Thereunder Against the Individual Defendants and West Marine**

61.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

62.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  West Marine is liable as the issuer of these statements.

63.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

64.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

65.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

66.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

67.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

68.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Monomoy

69.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

70.     The Individual Defendants and Monomoy acted as controlling persons of West Marine within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

positions as officers and/or directors of West Marine and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

71.     Each of the Individual Defendants and Monomoy was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly in the making of the Proxy Statement.

73.     Monomoy also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

74.     By virtue of the foregoing, the Individual Defendants and Monomoy violated Section 20(a) of the 1934 Act.

75.     As set forth above, the Individual Defendants and Monomoy had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  August 9, 2017                    **LEVI & KORSINSKY, LLP**

By:   _/s/ Rosemary M. Rivas_
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff PAUL PARSHALL*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long (to be admitted *pro hac vice*)
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

## CERTIFICATION OF PLAINTIFF

I, Paul Parshall ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1.      Plaintiff has reviewed the complaint and authorizes its filing.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary.  I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4.      Plaintiff's purchase and sale transactions in the West Marine, Inc. (NasdaqGS: WMAR) security that is the subject of this action during the class period is/are as follows:

**PURCHASES**                                                                **SALES**

| Buy Date | Shares | Price per Share |
|---|---|---|
| 10/4/16 | 100 | $8.55 |
|  |  |  |
|  |  |  |
|  |  |  |

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.    During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of July, 2017.

_____
Paul Parshall